May it please the court, I'd like to reserve two minutes for rebuttal argument. My name is Isaac Zarea and I represent Donald Dunlap. Donald, this case has been going on for almost ten years. Mr. Dunlap was arrested on the allegation that he had a concealed weapon. The arresting officer said he had a concealed weapon in the vehicle, even though it was plainly visible. But that was his argument and Mr. Dunlap did not have any weapons on his person. The statute that the officer arrested him under specifically said that it was illegal to not notify a police officer if you have a concealed weapon on your person. The district court, when reviewing this case, this is before it went up to the Ninth Circuit the first time, pulled up a municipal code. And in the municipal code it said that it was required for the person who had a concealed weapon on or about them to notify the police officer. Officer Henry, the arresting officer, never had, he didn't plead anything about this municipal code. It wasn't in his charging documents. The municipality, when they originally argued this case, didn't mention the municipal code at all. It was only the district court that mentioned the municipal code and argued that under that the arrest was valid. When it went to the Ninth Circuit, the Ninth Circuit said the district court misinterpreted the municipal code. Because the municipal code has three parts. First one said you have to identify to a police officer if you have weapons on or about the person. And the third part said if it's in a vehicle, then the standard is whether the weapon is on the person, concealed on the person. So this court has asked the parties to apply Heen v. North Carolina that deals with a reasonable mistake of law. But before we get there, the Ninth Circuit also said even if there is no Heen defense for the officers here, there's qualified immunity. There's potentially qualified immunity. Unless someone on the panel disagrees, I'd like you actually to start with qualified immunity. So what is the clear authority that would have told the officer in this circumstance that what he did would violate the Fourth Amendment? Okay. So the way we look at it, this issue has to be based on the statute that he arrested Mr. Dunlap under. Alaska Statute 1161-220, and it stated that a person who has a concealed weapon on their person has to notify a police officer when they come into contact. No, I understand. So you're going back to what the statute says, and that's kind of the Hein, however you pronounce that name, case. But is there an actual court decision somewhere that would notify the officers that under these circumstances, the officer under these circumstances, a search would violate the Fourth Amendment? Yes, yeah. So under the Alaska Statute, DiNardo v. Alaska was a case specifically addressing 1161-220, and it went at length into the legislative intent of that statute comparing the word on the person to about the person. In DiNardo, the person had a briefcase with a concealed weapon, and so the court said that is connected to the person as would occur with battery, and therefore that's a concealed weapon on the person. But it went at length, DiNardo did, to point out that that case drew a specific requirement that there has to be personal contact with the concealed weapon. And it's been clearly established that Mr. DiNardo had no weapons on his body. And the irony is that Mr. Dunlap cited DiNardo to Officer Henry. He said, listen, I am allowed, because Mr. Dunlap was a 20-year correctional officer. He had a copy of 1161-220 under his visor. And when he was questioned, he said, I have no weapons on my person. And as such, you should not be arresting me. Still arresting. Why wouldn't DiNardo actually support what the officer did here? It suggests a somewhat expansive reading of that phrase on his person. And to the extent that it suggests an expansive reading, why wouldn't that support the judgment of the officer here? Because there was no weapon on the person or connected to the person. And DiNardo specifically said the way this statute, looked at the legislative intent and said the legislator had the choice. Originally, the statute said prohibited having a weapon in the glove box. But DiNardo specifically said that is not what we want. We want it only if the weapon is physically connected to the person. On the person or connected in some way to the person's physical body. So if it's sitting next to the person, then it's not a concealed weapon. And so in this case, the only concealed weapon, well the police didn't see a concealed weapon, saw a rifle next to Dunlap. And based on that, searched the vehicle, found other weapons in the back. But there was very, very clear that DiNardo, and DiNardo went over this whole issue that the weapon has to be in contact with the person. It can't just be sitting in the seat next to them. And the reason why this went to the Ninth Circuit last time was because the municipal code is a little less clear. The municipal code starts using the word on or about. But then when it does, when it talks about in the vehicle, it also says it has to be on the person. So under 11-621-220, Officer Henry was clearly put on notice, and this case was dismissed. When it was dismissed, they said based on DiNardo. So it was clear that DiNardo identified to the police officers what the constraint of a concealed weapon was supposed to be. Counsel, let me ask you this. Let's say we were to disagree with you on that. And let's say we did find qualified immunity here. Is this case over? If you found qualified immunity, well, if you found that the arrest was, I would think that if you found qualified immunity, then you'd be saying that you'd be basically overruling DiNardo. But then, yeah, then I guess. That's not my question. My question is, is that, is this case over? I notice you and your client sued the Anchorage Police Department. Qualified immunity usually applies, in my understanding, to individuals, not police departments. So if we were to find qualified immunity in favor of the officer, is this case over? I think it depends on whether there was a false arrest or not under Heehan. Because if there was a false arrest and the officer was trained by the municipality to ignore DiNardo and to arrest people based on the fact that the vehicle is part of the person, that was a concept that the municipality said to the officers. The vehicle is part of the person, so if there's a concealed weapon in the vehicle, it's also concealed on the person. If we determine that there was a false arrest because there was no concealed weapon on the person, maybe, you know, I don't think. Has that been alleged in this case, a failure to train? Yes. And the theory being that you did not train on DiNardo? Yes, yeah. And the officer in deposition clearly said, we were trained that if there's a weapon in the vehicle, it's on the person. We asked for supplemental briefing on this point, and so I want to be clear, if we find qualified immunity for the officer, your view is that the case still goes on against the department? If it's determined that the arrest was false, yes. If the arrest was without probable cause. Okay, but no, again, if we find that from the officer's perspective, the arrest was okay in terms of qualified immunity, if that's what this court holds, is this case over as to the police department? I wouldn't think so. I would think we would still be able to, although in the supplemental briefing on remand, the district court, without offering us to do any briefing on anything related to the municipality or district court, already ruled that if there is a false arrest here, or if the arrest is valid, then the rest of the case is over. Are you appealing that decision as well? When the Ninth Circuit sent us back, we were not given the opportunity to brief on whether this applied to the Anchorage Police Department or whether it applied to the municipality. We were specifically asked to determine whether, as goes to the officer, whether Heen established that there was a mistake of law and that as a result there was qualified immunity. So we didn't brief that. The municipality didn't brief it either, but the judge just issued a decision. We said in our supplemental briefing that the dismissal of this case against the municipality and the police department was based on a false arrest. I think that, I don't know, it's not certain. We think that the arrest was not proper. I think if on that point the arrest is determined to be improper, then the rest of the case continues. Why don't we stop there? We'll give you some time to rebuttal, okay? If you need to lower that a little bit, you can. You okay? Okay. Thank you. May it please the Court, my name is Pamela Weiss. I'm an assistant municipal attorney from the municipality of Anchorage. I'm glad to be able to be here to clarify and answer any questions that you have. I think I will just go straight to the last point that you were discussing with Mr. Zeraya. I think it's eminently clear both from the district court's order, from our supplemental briefing and the record, that the only issues on appeal are this question about the application of HINE and then the qualified immunity question. The district court, following the municipality's motion for summary judgment on the entirety of the plaintiff, Mr. Dunlap's complaint, granted summary judgment. It was then appealed to the Ninth Circuit. The Ninth Circuit ruled narrowly that the stock was fine, that the Terry stock was fine, and everything was fine except we want you to go back and look at whether HINE, which has been decided in the interim, applies and whether or not there's qualified immunity. The court then, the district court, in its decision addressed those, but also addressed some of the alternative things that had been raised in the motion for summary judgment, primarily independent basis for liability against the municipality under Monell. And the court found that there was no, there was nothing pointed to in any of the responsive briefs, so there was an opportunity for briefing, even at the first level, about this issue of independent liability of the municipality. When Mr. Dunlap filed his appeal, he did not challenge the court's explicit ruling that there was no independent liability against the municipality for a failure to train claim, as well as independent basis under state law, false arrest, some other state law claims that were asserted as well. So those issues have not been briefed. They were clearly decided. They were briefed at the earlier stages of the briefing to the district court. So if you find either that HINE applies and there was a mistake of law, or that there's qualified immunity, this case is done, and that's the position of the municipality. And so I had prepared to focus on HINE, but I will first focus on the qualified immunity question, and I think because ultimately that point will be dispositive, because qualified immunity is more forgiving, even than the mistake of law analysis under HINE. I think this case is a prime example of a case where HINE would apply, even though it's not the law that the municipality or the officer had relied upon. I don't think you're going to find many other cases where the law is ambiguous in the same sort of ways as you would find in HINE. But the qualified immunity analysis is even more forgiving, and it requires the plaintiff or the appellant in this case to show that the law was clearly established and gave the officer notice that arresting Mr. Dunlap in this situation would have violated his constitutional rights. The only case that appellant has pointed to is this DiNardo case. That case is different. That case concerned only the question of the state law at a time where this municipal code provision did not even exist. It dealt with a different set of facts, and I think to some degree that appellant has mischaracterized what that holding was. The holding was not that it has to be in touch with the person. In fact, the holding was that on the person is broad enough to encompass a container, a hand-carried container, a briefcase. In this case, there were weapons in a fanny pack on the seat next to him. I think he's also misstated a little bit the facts of the case. There was not a search. I just want to make sure it's clear that there was not a search. What happened was the officer saw what appeared to be a rifle stock sticking out of the seat between the door and the passenger seat and asked Mr. Dunlap to exit the car. The district court and the Ninth Circuit panel in the 2012 appeal all agreed that this was proper. It was when the door was opened. In plain view, there was a knife in the doorway, a machete under the seat, and it turned out later that there was a gun stashed within about a few inches of Mr. Dunlap between himself, between his seat and the counsel, as well as in the fanny pack. Counsel, can you respond to a point that opposing counsel made? And that is it seems that, with all due respect, the Anchorage ordinance does seem to me to be a bit of a muddle. It's really hard to figure out how that gets applied. And I can certainly understand why an officer acting pursuant to that ordinance would have some trouble understanding what that officer can or cannot do in a situation like this. But it does seem clear that the officer never relied on that ordinance. He cited the Alaska state law, which arguably sort of is more difficult for him to justify, because by its terms it doesn't even speak about a vehicle situation. It does use the language on his person, suggesting that in this vehicle situation, where none of these items were on his person, that that law would not apply. And yet, much of the defense of what he did here invokes this municipal ordinance that he never relied upon. Why is it appropriate to bring that ordinance into the whole clearly established law question? Well, I think for the same reason that it applies if you were to apply Hine. The question about probable cause is an objective analysis. We know that from the case law, Supreme Court decisions, and this circuit as well as every other circuit. It's an objective analysis. And I think that what you run the risk of doing is ending up with inconsistent results, either in the case of Hine or in a qualified immunity. If you're going to restrict your analysis solely to whether or not the officer relied upon it, you may end up with different results in an identical case with the same facts and with the same laws in place. So, counsel, I have a similar inquiry. So, both the ordinance and the statute deal with concealed weapons. Yet, your argument is that all of these things were in plain view when the officer opened the door. So, how could he possibly think it was reasonable to, objectively reasonable, to arrest him when everything was in plain view when he opened the car door? Well, the only item that I think we've all agreed that we're assuming for purposes of this case, that the item that was in plain view was the rifle. They were concealed from the officer at the time that the vehicle was closed. So, once the door opened, some of these items were seen in plain view. Some of them were not. The gun that was between the seat and the console was not found until later. And neither was the item in the fanny pack on the seat. That was concealed. It was inside the fanny pack. So, if that addresses that question about that they were only visible once you had to open or remove something to see it, that is open. But the officer arrested him under the statute, which talks about being concealed on the person. So, why does he get qualified immunity for that when nothing was concealed on the person? Well, I think that the issue is that we need to go back to this issue of the probable cause analysis. The probable cause analysis is objective. We do not worry about the subjective. I know it's objective, right? But he objectively arrested him under the statute, documented under the statute. But there's no question that probable cause can exist even if the probable cause exists for a crime that the officer did not arrest the individual for. So, that's well established. That has not been refuted here. That hasn't even been argued about. The only argument that the appellant has made is that, well, that wasn't what he cited. But the case law is clear that probable cause can exist even if that is not the crime that was cited by the officer because they have to make these decisions in very quick amounts of time without the benefit of being able to peruse every legal book. So, the court's been very clear that it can be based on a law even if they didn't cite it. As to the reasonable mistake of law issue, that's not yet clear whether a law that was not actually under consideration by an officer, whether that can factor into the reasonable mistake of law analysis. Isn't that so? That is not clear yet. Isn't that true? I'm sorry, Your Honor. Are you saying it's not clear yet whether it applies to the reasonable mistake of law analysis? Yes. I mean, in a situation where the law that is invoked in support of the reasonable mistake of law issue is not actually the law that an officer relied upon, it's not at all clear yet whether that's appropriate. Isn't that true? I will agree with you. There have been different courts that have done different things. I think that it makes the most sense to apply it given the objective standard under the mistake of law because what may happen, and I was beginning to talk a little bit about this, that you may have identical facts with the same laws in place, but if you do not consider whether or not there was a mistake of law because the officer didn't rely upon it, you may find that there's a Fourth Amendment violation. But if the officer happened to cite that law, you may conclude that there's a mistake of law. Because qualified immunity is more forgiving, as the Supreme Court made clear, for purposes of the qualified immunity analysis, it does not matter whether the law involved was actually relied upon by the officers. Is that your position? Well, the standard is that the officers would know that the constitutional rights would be violated, and I think that it, too, is a reasonable officer, so it, too, is an objective standard. And in this particular case, that objective, that an officer would not reasonably know that it would violate the constitutional rights, and I don't think that the court should begin injecting a level of subjectivity into this analysis at that stage, which is to be more forgiving, but also because it, too, should be objective. Unless anyone has any other questions? All right, thank you very much, Counsel. Thank you. We'll give you two minutes. I think the issue that was addressed as to whether or not the reasonable mistake of law issue should be based on what the officer thought or what a court decided, I think it's very clear that when you're dealing, because in this situation, the court's determination that the officer is guilty of a crime, that this statute apply, was overruled. So we have two mistaken interpretations of the law. We have the courts, and we have the officers, and I think we have to, in this situation, look at what the officer was thinking, what objective indications the officer had to think that there was a concealed weapon. And that goes also to qualified immunity. If you're looking and you're saying that qualified immunity immunizes wrongful conduct unless the officer had an opportunity, a reasonable officer had a reasonable opportunity to understand that what he was doing was illegal, well, you can't, you have to look at Denardo, and you can't say, well, there was some confusion regarding the municipal code, and therefore, the officer was reasonable in being confused about Denardo. Under Denardo, wouldn't the guns in the fanny pack or the weapon in the fanny pack have qualified under the Alaska statute? No, not at all, because they had no, they were not physically connected to- But Denardo talks about weapons being in briefcases. Only, no, only, and that case is really important. It was cited in California as very clearly, Wade v. State, very clearly points out that in that case, the briefcase was in the person's hand, physically connected, just like battery. Battery occurs if you're holding a tray and they smack it out of your hand. But if you put that tray down and someone knocks the tray, that is not battery. So here, that weapon was away from him. He's sitting in the driver's seat, and it's quite a bit away. Okay, fair enough. So what's the case that says what you just said? Denardo v. Alaska. No, Denardo does not say that. Denardo talks about a briefcase, but what's the case that says Denardo does not apply to something right next to you, like a fanny pack? Briefcase in hand, briefcase right next to you. What's the case that makes that distinction? I think Denardo is the case you would cite? Denardo very specifically went over the legislative intent that they were making sure that a weapon in a fanny pack was not going to be concealed on the person. A weapon in the glove compartment was not going to be concealed on the person. It went over the legislative intent of that statute. Originally, it did say about the person, and they said, we are eliminating that confusion, and we're saying it has to be on the person. And the very outward limit of that is if it's in a backpack around the person that he's holding on to. The language in Denardo very clearly talks about someone who's carrying a deadly weapon in a purse, a briefcase, or even a paper bag. So I guess factually, was he carrying the fanny pack? No, he wasn't. And you could say in a vehicle he's carrying it, but Denardo went over that, and the legislative intent was that it was not going to encompass something that's in the vehicle. Otherwise, all weapons in a vehicle would be technically carried, even if it's in the very back seat. And so they said it has to be connected to the person on the, and that's why they used the word on the person rather than about the person. So under Denardo and under the Alaska statute, it says on the person, and it could very easily have said about the person, and it didn't. Thank you very much, counsel, for your argument in this case. Thank you. Thank you. So this matter is submitted.
judges: Lipez, Wardlaw, Owens